## CHICAGO PNEUMATIC TOOL CO. v. ZIEGLER.

### No. 9493.

District Court, E. D. Pennsylvania.

June 2, 1943.

See, also, 40 F.Supp. 416.

Morgan, Lewis & Bockius and W. Heyward Myers, Jr., all of Philadelphia, Pa., and Watson Bristol, Johnson & Leavenworth, of New York City, for plaintiff.

Joseph G. Denny, Jr., of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

The opinion of February 10, 1943, is amended by the addition at the end of the first paragraph of the following sentence: "The latter is the broad license to make use and sell which conveys all the licensor's right, title and interest, and amounts to an assignment."

In the answers to respondent's requests for findings of fact: In 33, "finding" is changed to "evidence;" in 66, "from January 27" is changed to "of January 27," "January 29, 1942" to "January 29, 1941,", and "$883.34" to "$833.34."

The respondent's first request for conclusion of law, affirmed in the answers, is amended by striking out "and has failed to do so," and as so amended is affirmed.

The petitioner's motion to amend is denied except as stated above.

The petitioner's motion for rehearing is denied. It is largely based upon a misconception of the basis of the Court's ruling. Obviously, when the Court, in the opinion, said "The second (contract) was intended to extend the provisions of the first to the two specifically mentioned patent applications", etc., the Court was not referring to the kind of estate taken by the licensee, but had in mind such provisions as are material to determining the issues involved in this case—specifically the obligation to pay minimum royalties for the duration of the patents which constituted the subject matter of the agreements. Paragraph 1 of the second agreement makes the assignment specifically "subject to the terms and conditions of said license agreement (first agreement)" and that term cannot be ignored or read out of the contract. It clearly negatives the petitioner's contention that the second contract was merely a sale of certain new patents for a lump sum consideration, royalty free. Evidence which also goes to negative this contention is the fact that the consideration recited in the second agreement is $2,000 "and other valuable

considerations" and, as appears from the voucher (Exhibit A), given by Haeseler and accepted by the petitioner, the $2,000 was merely to reimburse Haeseler for expenses to date.

The petitioner's motion, under Rule 37 (c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for expenses is granted as to item 1. Expenses in the amount of $639.50 are assessed against the respondent and the respondent is directed to pay the same forthwith.

### Respondent's Motions.

The first request for amendment of findings is denied. The finding, however, is amended by adding after the word "application" the following: "except two payments amounting to $142.10, initial expense of the application." This amendment does not affect the conclusion reached. Under Paragraph 10 of the first agreement the petitioner clearly had the right to determine for itself what improvements of Haeseler's it would accept and bring under the royalty provisions of the agreement. The determination was to be made by "the indication of its desire to use said inventions" and the payment "all expenses * * * in connection with the application and securing Letters Patent." This means more than paying the initial filing cost. There is no evidence that anything further was ever done or said with respect to this application and there is nothing to indicate that either party at any time construed the payments as an exercise by the petitioner of its right of selection.

The respondent's second request for amendment of findings is denied. The first clause of the finding is that "no such Ball Valve hammers were ever sold by the Petitioner." The remainder of the finding merely states one reason why no such hammers were sold. It is not of great importance, but there is plenty of evidence that the Boyer hammer was superior to the Ball Valve hammer and, so far as it has any bearing upon the issue, the finding will be allowed to stand.

The third request for amendment of findings is granted only to the extent that the words "of prosecuting the application for it" are striken out of the petitioner's fifth request for conclusion of law, as affirmed.

The fourth request for amendment of findings is denied. I agree that the words "may be" do not necessarily imply futurity, but they may, and, as used in the second agreement, I am of the opinion that they do.

Requests for additional findings 67 and 68 are denied. The original patent for the Hummer drill calls it a "drilling machine" and a "drill"—nothing else. The specification of patent 1,181,383 cited by the respondent in support of this request, states that it relates to "means for clutching or gripping the working tools of different kinds as used in power hammers and drills." The only direct reference in this patent to the earlier 1,146,870 patent for the Hummer drill calls the latter a patent "for improvements in drilling machines" (page 1, lines 77, 78)—not a power hammer or a hammer of the percussive type. I am still of the opinion that a drill is not a hammer.

Requests for additional findings 69 to 72, inclusive, are all affirmed with the qualification that the mechanism of the '780 patent was never used with a rock drill, was not intended to be so used and would have been wholly impracticable had such use been attempted.

The motion for rehearing is denied. Almost a year after the last of the transactions which were offered to prove that ball valve hammers were sold, Haeseler said himself, "This hammer has not been placed on the market and has been confined to a few experimental hammers having been made." (Letter of February 19, 1920.) If an obligation to push the sale of patented inventions subject to minimum royalties existed and was broken, such breach might give rise to a cause of action (different from the one asserted here), but it would not establish the fact that any sales were made.

As to the contention that the burden shifts to the petitioner to disprove a sale if an order by Great Lakes Shipyard for one hammer was proved: The evidence relating to that order is very confused, and it is doubtful whether an order was given. Even if it was, however, "placing an order" for an article not at the time on the market or in commercial manufacture (see Haeseler's letter, supra) is not, in my judgment, even prima facie evidence of a sale.